UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SCOTT ALAN KLINE,
     Plaintiff,

vs.                          Case No.: 3:21cv1003/LAC/ZCB

DR. EDWARDS, et al.,
     Defendants.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Scott Alan Kline is an inmate of the Florida Department of Corrections (FDOC).  He is proceeding *pro se* in this action under 42 U.S.C. § 1983 and 42 U.S.C. § 2000cc-2(a) (the Religious Land Use and Institutionalized Persons Act (RLUIPA)).  Plaintiff is suing (1) Mark Inch, the former FDOC Secretary, (2) Dr. Edwards, the chaplain of Blackwater River Correctional Facility, and (3) Charles Maiorana, the warden of Blackwater River.  Defendants have moved to dismiss Plaintiff's Amended Complaint.  (Docs. 37, 43).  Plaintiff has responded in opposition.  (Docs. 46, 48).  For the reasons below, the motion to dismiss filed by Defendants Edwards and Maiorana should be granted.  And the

motion to dismiss filed by Defendant Inch should be granted in part and denied in part.

## I.    Background

This lawsuit stems from events that occurred in April through August of 2021 when Plaintiff was imprisoned at Blackwater River. (Doc. 21). Blackwater River is an FDOC institution that is privately managed by the GEO Group, Inc. (Doc. 37 at 1-2). Defendants Edwards and Maiorana were employed by GEO—Edwards as the institutional chaplain and Maiorana as the warden. (*Id.*). Defendant Inch was the FDOC Secretary during the relevant time period, but he has since been succeeded by Ricky D. Dixon. (Doc. 43).

Plaintiff is a practitioner of The Temple of Set, which involves three methods of practice—invocation, evocation, and divination. (Doc. 21 at 19, 23). He alleges Defendants have burdened his religious practice and engaged in religious-based discrimination by refusing to register The Temple of Set as his religious preference. (*Id.* at 19-24). Plaintiff alleges as a result of Defendants' refusal to recognize The Temple of Set, he has been denied items of religious property necessary to practice his religion.

2

Those items include a medallion (Ankh, Anubis, Horus, Set, Set-Horus, Wadjet, Isis, Thoth, or Baphomet), other items of worship (black candle, white candle, wand, athame, and prayer rugs or magnetic chalk to draw them), and a religious text ("The Book of the Law"). (*Id.* at 19-21).

Plaintiff also challenges the FDOC's policy of requiring tarot cards to be stored and used in the chapel. He claims this is unconstitutional because inmates are permitted to store and use standard playing cards in their cells. (*Id.* at 19-21). Plaintiff alleges the tarot card storage policy limited his ability to practice divination to only twice in five months at Blackwater River (April through August 2021). (*Id.* at 19).

Plaintiff asserts claims under RLUIPA, the First Amendment, and the Equal Protection Clause of the Fourteenth Amendment. (Doc. 21 at 25-27). He seeks an injunction (1) requiring Defendants to recognize The Temple of Set as his religious preference and permit him to have a medallion and items of worship (to be stored and used for at least two hours per week in the prison chapel); (2) requiring Defendants to permit him to keep tarot cards in his cell or, alternatively, guarantee him access to the chapel at least two hours per week for use of the cards; and (3)

requiring Defendants to authorize religious texts associated with The Temple of Set, including, "The Book of the Law" and "Magick" by Aleister Crowley, "Infernal Geometry," and "Order of the Nine Angles" by Flowers. (*Id.* at 25, 28). Plaintiff also seeks nominal and punitive damages against Defendants in their individual capacities. (*Id.* at 28).[1]

## II. Allegations in Plaintiff's Amended Complaint[2]

After Plaintiff arrived at Blackwater River, he asked the chaplain's office to register his religious preference as The Temple of Set. (Doc. 21 at 19, 21-22, 61). He further requested authorization to receive books and other worship items, including tarot cards. (*Id.*). Chaplain Edwards told Plaintiff that the FDOC did not recognize The Temple of Set as a religion. (*Id.* at 61). Chaplain Edwards further explained that he forwarded Plaintiff's concerns to the FDOC's "Regional Chaplaincy

---

[1] Plaintiff initially sought compensatory damages (Doc. 21 at 28), but he has dropped that request. (Doc. 46 at 2; Doc. 48 at 2).

[2] The Court does not include any legal arguments or conclusory allegations from Plaintiff's Amended Complaint because those are not properly considered as "facts." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court also accepts the allegations set forth in Plaintiff's complaint as true at this stage in the litigation.

Department." (*Id.*).   To facilitate Plaintiff's request for tarot cards, Chaplain Edwards registered Plaintiff's religious preference as Wiccan in the FDOC's database and told Plaintiff that he was authorized to have only those religious items that were approved for Wiccans.  (*Id.* at 22, 32, 61).  Warden Maiorana ratified Chaplain Edwards' response.  (*Id.* at 62-63).

One of the religious items that Plaintiff wanted was a medallion. (*Id.* at 19).  FDOC rules permit prisoners to wear one religious symbol or medallion.   Fla.   Admin.   Code   r.   33-602.201(16)(c)(1)(i).   The "Baphomet/Pentagram" is one of the symbols recognized by The Temple of Set.  (*Id.* at 34).  Other symbols include the Anubis, Horus, Isis, Thoth, Set, Set-Horus, and Ankh.  (*Id.* at 22, 34).  Chaplain Edwards authorized Plaintiff to have a pentagram medallion because it was approved for Wiccans.  (*Id.* at 33, 34).  Plaintiff had difficulty finding a supplier for a pentagram, so he asked Chaplain Edwards for authorization to have one of the other symbols mentioned above.  (*Id.* at 30-34).  Chaplain Edwards told Plaintiff to find another vendor for the pentagram.  He also told Plaintiff that the FDOC did not recognize Anubis as a religious symbol,

and he stated that the Ankh was authorized only for Coptic Christians and Rastafarians. (*Id.* at 31, 33, 34, 57). Plaintiff grieved this response to Warden Maiorana, and the warden's representative ratified Chaplain Edwards' response. (*Id.* at 35-36). Plaintiff then elevated the issue to the FDOC Secretary. (*Id.* at 37-38). A representative of the FDOC's Bureau of Inmate Grievance Appeals told Plaintiff that Wiccans were authorized to have a pentagram but none of the other symbols were on "the approved inmate property list." (*Id.* at 38).

Plaintiff also requested authorization to have other items of religious property, including a black candle, white candle, plastic athame, wand, and either prayer rugs or magnetic chalk to draw symbols on the floor. (Doc. 21 at 19-20). FDOC rules designate the items of religious property that practitioners of FDOC-recognized religions may have. Fla. Admin. Code r. 33-602.201(16)(a), (c), (d). Muslims are permitted to have prayer rugs, and all inmates are permitted to have colored chalk. *Id.*, r. 33-602.201(16)(c)2.b.; *Id.*, Appendix One, Property List. Chaplain Edwards told Plaintiff that he could not have any of the requested items because they were not authorized for any FDOC-

6

recognized religion. (*Id.* at 59). And Chaplain Edwards told Plaintiff that his request was not properly considered a grievance, so he could not use the grievance process to further pursue this issue. (*Id.*).

Plaintiff also wanted a particular book, "The Book of the Law." FDOC rules provide that prisoners may have "religious publications" that comply with the FDOC's rule regarding permissible reading material. Fla. Admin. Code rr. 33-602.201(16)(b), 33-501.401. Plaintiff was permitted to have "The Book of Lies" and "The Book of Thoth," but he was not permitted to have "The Book of Law" because it had been rejected by the FDOC's Literature Review Committee. (Doc. 21 at 21, 40-44). Plaintiff sought reconsideration of that decision, and the grievance coordinator at Blackwater River forwarded Plaintiff's grievance to the FDOC Secretary, in accordance with Fla. Admin. Code r. 33-103.005(1).[3] (*Id.* at 42-44). A representative of the Bureau of Inmate Grievance Appeals returned the grievance to Plaintiff without action because Plaintiff failed to attach a copy of the Notice of Rejection or Impoundment

---

[3] That rule provides that inmates may proceed directly to the Secretary's Office to grieve issues regarding permissible reading material. Fla. Admin. Code r. 33-103.005(1).

of Publication (form DC5-101), as required by Fla. Admin. Code r. 33-501.401(13)(a)(2). (*Id.* at 44). Plaintiff was told that he had fifteen days from the date at the top of the Notice of Rejection or Impoundment to file an appeal. (*Id.*).

The FDOC did authorize Plaintiff to use tarot cards, but in a limited fashion that Plaintiff claims was insufficient. (Doc. 21 at 19). FDOC rules require that tarot cards, along with other specified items, be stored in the chapel and used only under the supervision of the chaplain or an approved volunteer. Fla. Admin. Code r. 33-602.201(16)(d). The reason for the storage rule is that the specified items "pose a general security risk when allowed in an inmate's cell . . . ." *Id.* Plaintiff points out that the FDOC rules permit inmates to possess standard playing cards in their cells. *Id.*, Appendix One, Property List.

Plaintiff received the tarot cards in March 2021, but he was not permitted to go to the Blackwater River chapel to use them until mid-June because of Covid-19 restrictions. (*See* Doc. 21 at 19, 50-52, 56-58). Plaintiff requested permission to store his tarot cards in his cell, but a representative of the Bureau of Inmate Grievance Appeals told Plaintiff

that FDOC policy required storage of the tarot cards in the chapel because they posed a "general security risk." (*Id.* at 53-54).

Shortly after the Covid-19 restrictions were lifted, Chaplain Edwards scheduled Plaintiff for access to the chapel where Plaintiff spent approximately thirty minutes. (*Id.* at 68-69). In mid-July, Plaintiff filed a grievance about his lack of access to the tarot cards. He claimed that he had been given access only once for thirty minutes (Plaintiff stated he required an hour to complete a divination). (*Id.* at 69). Chaplain Edwards placed Plaintiff on additional callouts to the chapel but then cancelled them due to limitations on "space and time." (*Id.*). Plaintiff received access to his tarot cards once more (in August, for a period of one hour) before he filed this lawsuit. (*Id.* at 19). In sum, Plaintiff was able to access the tarot cards only twice in five months and for a total of one and a half hours. (*Id.* at 20).

### III.   Applicable Legal Standards

### A.   Motion to Dismiss Standard

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter,

9

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (internal quotation marks omitted). And "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (internal quotation marks omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

At the motion to dismiss stage, the Court's review is limited to the operative complaint. *Watkins v. Cent. Broward Reg'l Park*, 799 F. App'x

10

659, 664 (11th Cir. 2020) (holding that the district court properly declined to consider factual statements in the plaintiff's response to the motion to dismiss or the declaration that he attached to the response). Plaintiff's Amended Complaint (Doc. 21) is the operative complaint in this case. The complaint's allegations are taken as true and construed in the light most favorable to Plaintiff. *Chabad Chayil, Inc. v. School Bd. Of Miami-Dade Cnty., Fla.*, 48 F.4th 1222, 1229 (11th Cir. 2022) (citation omitted). And because Plaintiff is proceeding *pro se*, his pleadings are liberally construed. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

In addition to the Amended Complaint, the Court may consider any document attached to the complaint if (1) it is central to Plaintiff's claims, (2) its authenticity is not challenged; and (3) its contents are not in dispute. *Chabad Chayil, Inc.*, 48 F.4th at 1232 (citation omitted); *Saunders v. Duke*, 766 F.3d 1262, 1270-71 (11th Cir. 2014). Plaintiff has attached numerous administrative grievances to his Amended Complaint. (Doc. 21 at 29-69). The Court will consider the contents of those grievances to the extent there is no dispute as to their contents. The Court also will take judicial notice of, and consider, the FDOC's

administrative rules published in the Florida Administrative Code, Fla. Admin. Code Chp. 33. *See* Fed. R. Evid. 201(b)(2) (authorizing the court to "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

## B. Free Exercise and RLUIPA

Plaintiff has brought claims under the First Amendment's Free Exercise Clause and RLUIPA. In the prison setting, a rule, regulation, or policy restricting the exercise of religion is valid "if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (applying the *Turner* standard to a free exercise of religion claim). To succeed on a free exercise of religion claim, "an inmate must show that the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." *Rodriguez v. Burnside*, 38 F.4th 1324, 1330 (11th Cir. 2022) (cleaned up). Four factors frame the Court's analysis:

(1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it";

(2) whether "alternative means" of exercising the right "remain open to prison inmates," such that they may "freely observe a number of their religious obligations";

(3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and

(4) whether any "obvious, easy alternatives" to the current regulation exist, which would suggest that the policy is an "exaggerated response to prison concerns."

*See Turner*, 482 U.S. at 89-91 (cleaned up).

The Court "do[es] not balance these factors to see if some outweigh the others." *Rodriguez*, 38 F.3d at 1331 (citing *Beard v. Banks*, 548 U.S. 521, 532-33 (2006)). The Court simply uses them "to view the fundamental inquiry" of whether the prison regulation is reasonably related to legitimate penological interests. *Id.* (citing *Turner*, 482 U.S. at

13

89).  "If that rational connection is missing, the regulation fails, irrespective of whether the other factors tilt in its favor." *Rodriguez*, 38 F.4th at 1331 (cleaned up).  "[I]f the connection exists, the policy will stand." *Id.* (citing *Beard*, 548 U.S. at 533).

RLUIPA was enacted, in part, to address the "frivolous or arbitrary barriers imped[ing] institutionalized persons' religious exercise." *Cutter v. Wilkinson*, 544 U.S. 709, 716 (2005) (cleaned up).  By design, RLUIPA "provides greater religious protection than the First Amendment." *Dorman v. Aronofsky*, 36 F.4th 1306, 1313 (11th Cir. 2022).   As relevant here, Section 3 of the RLUIPA states:

> No government shall impose . . . a substantial burden on the religious exercise of a person . . . unless the government demonstrates that imposition of the burden on that person . . .
>
> (A) is in furtherance of a compelling governmental interest; and
> (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc(a)(1).

To prevail on a RLUIPA claim, the plaintiff must show that a government rule, regulation, practice, or policy substantially burdened

14

his religious exercise. *Ramirez v. Collier*, 142 S. Ct. 1264, 1277-78 (2022) (holding that a Baptist prisoner's challenge to Texas's execution protocol, which prevented spiritual advisors from being present in the execution chamber, was appropriate for a RLUIPA claim); *Holt v. Hobbs*, 574 U.S. 352, 361, 370 (2015) (determining that a grooming policy that prevents prisoners from growing beards, in accordance with their religious beliefs, violates RLUIPA). To establish a government rule, regulation, practice, or policy a prisoner must allege more than a single incident because "proof of a single incident of unconstitutional activity is not sufficient to impose liability." *Thomas v. Escambia Cnty. Jail*, No. 3:21cv1906-LC-HTC, 2022 U.S. Dist. WL 848361, at *21 (N.D. Fla. Mar. 4, 2022) (internal quotations omitted); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985) (holding that when a claim requires showing a government "policy" violated a prisoner's constitutional rights, isolated conduct, standing alone, will not suffice).

## C.    Equal Protection

Plaintiff also asserts a claim under the Equal Protection Clause of the Fourteenth Amendment, which requires the government to treat

similarly situated people alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state a claim under the Equal Protection Clause, a prisoner generally must allege "that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001) (cleaned up). An Equal Protection Clause challenge requires a plaintiff to plausibly allege "both an intent to discriminate and an actual discriminatory effect." *Greater Birmingham Ministries v. Sec'y of State*, 992 F.3d 1299, 1321 (11th Cir. 2021).

"Equal protection claims can be divided into three broad categories." *E & T Realty v. Strickland*, 830 F.2d 1113, 1112 n. 5 (11th Cir. 1987). The first category includes claims that a regulation discriminates on its face. *Id.* The second and third categories involve facially neutral regulations. *Id.* The second category includes claims that "neutral application of a facially neutral [classification] has a disparate impact." *Id.* The third category includes claims that the government is not equally administering a neutral regulation. *Id.* With

all categories, a plaintiff must establish that purposeful discrimination or discriminatory intent motivates the disparate impact or disparate treatment. *Id.*

**D.    The FDOC's administrative policies and rules**

It is the policy of the FDOC to "extend to all inmates the greatest amount of freedom and opportunity for pursuing individual religious beliefs and practices consistent with the security and good order of the institution."    Fla. Admin. Code r. 33-503.001(2)(a).    The FDOC's Chaplaincy Services Section is responsible for developing and evaluating religious programs throughout the FDOC and representing the FDOC, "with the approval of the Secretary," on all religious matters. Fla. Admin. Code r. 33-503.001(1)(a).  The Chaplaincy Services Section also provides general assistance and guidance to chaplains at each institution.  *Id.*  The "area chaplaincy services specialist" is the point of contact for the institutional chaplains. *Id.*, r. 33-503.001(1)(c).

The FDOC's administrative rules list items of "religious property" that are approved for worshippers of the specific religion with which the item is associated.  Fla. Admin. Code r. 33-602.201(16)(a), (c), (d).  An

inmate may have only the religious items that are associated with the inmate's registered religious preference, including a religious symbol or medallion that is not more than two inches in length or diameter. *Id.*, r. 33-602.201(16)(c). When an inmate changes his religious preference, he must dispose of all items associated with the previous religion unless the items are also associated with his new religion. *Id.*

The Chaplaincy Services Administrator (the head of the Chaplaincy Service Section) provides advice and guidance to the FDOC regarding approved religious items, and "religions and religious items not listed" in the Rule. Fla. Admin. Code r. 33-602.201(16)(g). The Chaplaincy Services Administrator reviews inmate requests for religious property not listed in the Rule to determine whether the item adheres to the tenets of the inmate's particular religion. *Id.*, r. 33-602.201(h). If the Chaplaincy Services Administrator determines that the item adheres to the tenets of the inmate's religion, then the FDOC's Bureau Chief of Security Operations determines whether the item presents a security risk. *Id.*

The institutional chaplains are responsible for planning, coordinating, and supervising religious activities at the institution in coordination with the institution's security staff. *See id.*, r. 33-503.001(1)(c). The institutional wardens may limit religious activities in the interest of security, order, or effective management of the institution. *See id.*, r. 33-503.001(3)(c).

## IV. Discussion

## A. Plaintiff's Amended Complaint is not a "shotgun pleading."

In their motions, Defendants have argued that Plaintiff's Amended Complaint is an impermissible "shotgun pleading." (Doc. 37 at 3-4; Doc. 43 at 22-24). Plaintiff has responded by pointing out that the Court previously screened the Amended Complaint for pleading defects under 28 U.S.C. § 1915(e)(2)(B). (Doc. 46 at 2-3; Doc. 48 at 7-8). Plaintiff further asserts that Defendants' motions to dismiss clearly articulate defenses to Plaintiff's claims, which demonstrates that the Amended Complaint was sufficiently clear to enable them to frame a responsive pleading. The Court agrees with Plaintiff.

A "shotgun pleading" is one that fails to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). Plaintiff's Amended Complaint, when viewed in context with the administrative grievances that he incorporated into his Amended Complaint and when construed liberally, is not a shotgun pleading. The pleading is sufficient to put Defendants on notice of the claims against them and the facts supporting each claim. The Amended Complaint, therefore, should not be dismissed as a shotgun pleading.

## B. Defendant Inch's motion to dismiss should be granted in part (with respect to Plaintiff's individual capacity claims) and denied in part.

Plaintiff asserts individual and official capacity claims against former FDOC Secretary Inch under RLUIPA and the First and Fourteenth Amendments. (Doc. 21 at 23-24, 25-27). Plaintiff seeks nominal and punitive damages, as well as injunctive relief. (*Id.* at 25, 28).

Defendant Inch seeks dismissal of Plaintiff's claims on four grounds. (Doc. 43). First, Plaintiff failed to exhaust administrative remedies. (*Id.* at 4-22). Second, Plaintiff's Amended Complaint is an improper "shotgun pleading." (*Id.* at 22-24). Third, Plaintiff has not stated a plausible claim for relief against Defendant Inch in his individual/personal capacity. (*Id.* at 1 n.1, 24-28). Fourth, Plaintiff's requests for nominal and punitive damages against Defendant Inch in his individual capacity are excessive, and an award of monetary damages for any official capacity claims against the current FDOC Secretary, Ricky D. Dixon, is barred by Eleventh Amendment sovereign immunity. (*Id.* at 28-38). With respect to Plaintiff's requests for injunctive relief, Defendant Inch asserts that the current FDOC Secretary is now the appropriate party. (*Id.* at 1 n.1).

In Plaintiff's response, he argues that he has stated individual capacity claims against Defendant Inch based upon his "instructing or authorizing" his representative to deny Plaintiff's administrative appeals and his "fail[ure] to adequately instruct, advise, counsel, supervise, and/or train" the employees who act on his behalf. (Doc. 21 at 24; Doc.

48 at 8). Plaintiff further argues that has he alleged sufficient facts to hold Defendant Inch personally liable under a "policy and practice" theory. (Doc. 21 at 23; Doc. 48 at 8).

As will be discussed in detail below, Plaintiff has not stated a plausible individual capacity claim against Defendant Inch under RLUIPA, the First Amendment, or the Fourteenth Amendment.[4] Nor has he plausibly alleged an official capacity claim against the current FDOC Secretary for money damages because such a claim is barred by sovereign immunity.

---

[4] Defendant Inch's motion to dismiss does not argue that Plaintiff has failed to state a plausible official capacity claim against the FDOC Secretary for injunctive relief based on allegations that RLUIPA has been violated by the FDOC's tarot card storage policy, that RLUIPA and the First and Fourteenth Amendments have been violated by FDOC's failure to recognize The Temple of Set as a religion and its associated items as religious items, as well as the FDOC's rejection of The Book of Law as a religious text. The Court previously screened these claims and determined they were sufficient for service. Nothing in the current motions to dismiss has changed that determination. Thus, these official capacity claims for injunctive relief against the FDOC Secretary will be permitted to go forward.

### 1. The Eleventh Circuit recently rejected the FDOC Secretary's exhaustion argument.

Defendant Inch devoted much of his motion to dismiss to arguing that Plaintiff's rule-based claims are unexhausted under 42 U.S.C. § 1997e(a). (Doc. 43 at 4-24). More specifically, Defendant Inch has argued that in order to exhaust a challenge to an FDOC rule, Plaintiff was required to file a petition invoking rulemaking (PIRM) under Fla. Stat. § 120.54(7). (*Id.* at 8-18).

After the motion to dismiss was filed in this case, the Eleventh Circuit rejected this same exhaustion argument in *Sims v. Sec'y Fla. Dep't of Corr.*, 75 F.4th 1224, 1227, 1231 (11th Cir. 2023). The *Sims* court held that Florida's grievance procedures do not require that a prisoner file a PIRM. Florida's process instead requires just three things: (1) an informal grievance, (2) a formal grievance, and (3) an appeal to the Secretary. There is no dispute that Plaintiff adequately completed each of those three steps here. Thus, based on *Sims* there is no merit to the argument that this case should be dismissed for Plaintiff's failure to exhaust his administrative remedies.

### 2. Plaintiff has not stated a plausible individual capacity claim against Defendant Inch under RLUIPA.

RLUIPA provides for a cause of action against a "government," which includes any department of a State and "any other person acting under color of State law." 42 U.S.C. § 2000cc-5(4). A plaintiff may not seek relief under RLUIPA against an individual employee of a "government." *Smith v. Allen*, 502 F.3d 1255, 1275, 1281 (11th Cir. 2007), *abrogated in part on other grounds by Sossamon v. Texas*, 563 U.S. 277 (2011); 42 U.S.C. § 2000cc-2(a) (providing that a plaintiff, if successful, may obtain "appropriate relief against a government"); *see also Ravan v. Talton*, No. 21-11036, 2023 WL 2238853, at *6 (11th Cir. Feb. 27, 2023) (noting that "only institutions that receive federal funds— not the individual employees of those institutions—are subject to liability" under RLUIPA).

Because RLUIPA authorizes relief only against "government" entities, not individuals who are employed by those entities, Plaintiff may not obtain relief under RLUIPA against Defendant Inch in his individual capacity. For this reason, Plaintiff's individual capacity RLUIPA claims against Defendant Inch should be dismissed.

24

### 3. Plaintiff has not stated a plausible individual capacity claim against Defendant Inch under the Free Exercise and Equal Protection Clauses based on the FDOC's failure to recognize The Temple of Set and its religious items, or the FDOC's rejection of "The Book of the Law."

Plaintiff advances three theories for holding Defendant Inch individually liable for violating the First and Fourteenth Amendments. First, he alleges Defendant Inch directly participated in the violations by "instructing or authorizing" his representatives to deny Plaintiff's administrative grievance appeals. (Doc. 21 at 24). Second, he alleges Defendant Inch "failed to adequately instruct, advise, counsel, supervise, and/or train" the employees who acted on his behalf. (*Id.*). Third, Plaintiff alleges Defendant Inch created or implemented the policies or practices that resulted in the constitutional violations. (*Id.* at 23).

Defendant Inch argues that the denial of grievances by his representatives is not a sufficient basis to hold him individually liable under 42 U.S.C. § 1983. (Doc. 43 at 24-27). Defendant Inch further argues that Plaintiff has not stated a plausible claim under a failure-to-supervise or failure-to-train theory, because he has not alleged facts that suggest Defendant Inch had actual or constructive notice of a deficiency

25

in training or supervision of his subordinates. (*Id.* at 26-28). With respect to the "policy or practice" theory, Defendant Inch argues that Plaintiff has not alleged facts that suggest Defendant Inch was aware of any alleged unconstitutional policy or practice related to the denial of Plaintiff's ability to practice his religion. (*Id.*).

Section 1983 requires proof of an affirmative causal connection between the defendant official's acts or omissions and the alleged constitutional deprivation. *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). Where, as here, an individual is sued in his individual capacity for monetary damages, the causation inquiry "must be more refined and focused" than the inquiry undertaken where only declaratory and injunctive relief are sought. *Williams v. Bennett*, 689 F.2d 1370, 1380-81 (11th Cir. 1982).

Plaintiff may establish a causal connection by showing that Defendant Inch was personally involved in the acts that resulted in the constitutional deprivations. *Zatler*, 802 F.2d at 401. To show causation under a failure-to-train or failure-to-supervise theory, Plaintiff must show that Defendant Inch knew of a need to train and/or supervise in a

particular area, and that Inch made a deliberate choice not to take any action. *See Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). Plaintiff may satisfy the notice requirement of a failure-to-train/supervise theory in two ways. He may show that Defendant Inch was aware that a pattern of constitutional violations existed and nevertheless failed to provide adequate training or supervision. *Id.* at 1351. Or Plaintiff may show that the likelihood for the constitutional violation was so high that the need for training or supervision was obvious. *Id.* at 1351-52.

Finally, Plaintiff may establish a causal connection by showing that Defendant Inch established or utilized a policy or custom that resulted in the constitutional violations. *Zatler*, 802 F.2d at 401. To do this, Plaintiff must identify the policy or practice that Defendant Inch established or utilized. Plaintiff must then show that the identified policy or practice played a role in the alleged constitutional violation. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 706 (11th Cir. 1985).

### a.   Refusal to recognize The Temple of Set and its associated religious items

Plaintiff alleges Defendant Inch personally participated in the FDOC's "refus[al]" to recognize The Temple of Set and its associated religious items. In support, he alleges that his administrative appeals to the FDOC Secretary's Office on these issues were denied.  (Doc. 21 at 24, 37-38).  Plaintiff further alleges that Defendant Inch failed to train and/or supervise those who denied his requests. (*Id.* at 24).  Plaintiff also alleges that Defendant Inch created or implemented policies or practices that resulted in his subordinates' refusal of Plaintiff's request to recognize The Temple of Set and its associated religious items.  (*Id.* at 23).

First, Plaintiff's grievances establish that Defendant Inch did not personally review or respond to any grievance.  Grievance appeals to the Secretary's Office are processed by the Bureau of Policy Management and Inmate Appeals.  Fla. Admin. Code r. 33-103.007(6)(a).  Plaintiff's appeal—which complained that The Temple of Set was not recognized, and that he was improperly confined to the religious medallions of the Wiccan faith—shows that the Bureau of Inmate Appeals referred

Plaintiff's appeal to the FDOC's Chaplaincy Services Section. (Doc. 21 at 38). The Chaplaincy Services Section responded that Wiccans were permitted to have a pentagram, but none of the other medallions (i.e., an ankh, Anubis, horus, or wadget) were on "the approved inmate property list." (*Id.*). The Chaplaincy Services Section did not address Plaintiff's complaint regarding the FDOC's failure to recognize The Temple of Set as a religion. (*Id.*). The Bureau of Inmate Appeals' representative, "T. Bowden," ratified the Chaplaincy Services Section's response. (*Id.*).

That appeal was not Plaintiff's first complaint about the FDOC's failure to recognize The Temple of Set and the items necessary to practice it. Months earlier, Plaintiff raised the issue in an informal grievance to Chaplain Edwards. (Doc. 21 at 61). Chaplain Edwards told Plaintiff that The Temple of Set was not recognized by the FDOC, but that his "concerns" were forwarded to the regional representative of the Chaplaincy Services Section. (*Id.*). Warden Maiorana ratified Chaplain Edwards' response and told Plaintiff that he could appeal to the FDOC Secretary's Office. (*Id.* at 63). There is no indication that Plaintiff appealed.

Plaintiff also asked Chaplain Edwards for certain religious items (the candles, athame, wand, and prayer rugs or magnetic chalk). (Doc. 21 at 59). Chaplain Edwards told Plaintiff that none of those items were authorized for any FDOC-recognized religion. (*Id.*).

The bottom line with respect to Plaintiff's grievance-based theory of liability is that the mere fact that the FDOC's administrative rules authorize staff members in the Bureau of Inmate Appeals to respond to grievances and appeals filed with the Secretary's Office does not permit a reasonable inference that Defendant Inch *personally* instructed or authorized the responses to Plaintiff's requests for recognition of The Temple of Set and its associated religious symbols and items. This theory of individual liability for Defendant Inch fails.

Plaintiff's second theory of individual liability meets a similar fate. Plaintiff attempts to hold Defendant Inch individually liable under a failure-to-supervise or failure-to-train theory. Plaintiff essentially alleges that Defendant Inch failed to train or supervise the FDOC's Chaplaincy Services Administrator, who is head of the Chaplaincy Services Section and charged with providing advice and guidance to the

FDOC regarding recognition of religions and religious items not currently recognized by the FDOC. (Doc. 21 at 23-24). This theory of liability fails, however, because Plaintiff does not allege facts that permit a reasonable inference that Defendant Inch had actual or constructive notice of a deficiency in training or supervising the Chaplaincy Services Administrator, the Chaplaincy Services Section or, for that matter, the Bureau of Inmate Appeals.

This leaves Plaintiff's "policy or practice" theory. Plaintiff does not allege that Defendant Inch himself established or applied a policy or practice that played a role in the non-recognition of the Temple of Set and its associated religious items. At the time of the events in question (April through August of 2021), it was FDOC policy to "extend to all inmates the greatest amount of freedom and opportunity for pursuing individual religious beliefs and practices consistent with the security and good order of the institution." Fla. Admin. Code r. 33-503.001(2)(a). The Chaplaincy Services Section was responsible for developing and evaluating the FDOC's religious programs, providing general guidance to chaplains, and representing the FDOC "with the approval of the Secretary," on all

religious matters. *Id.*, r. 33-503.001(a). The head of the Chaplaincy Services Section was tasked with directing and providing advice and guidance to the Department regarding religions and religious items that were not approved in the FDOC's rules. Fla. Admin. Code r. 33-503.001(1), r. 33-602.201(16)(g).

If Defendant Inch himself personally established or approved a policy or practice of refusing to recognize new religions in general (meaning, those currently not recognized by the FDOC) or The Temple of Set in particular, then he could be liable for interfering with Plaintiff's ability to practice his religion. *See, e.g., Ancata*, 769 F.2d 700, 706 (holding that if the sheriff himself established or utilized a policy or custom requiring that inmates seek court orders to obtain medical services, then he would be liable if the result of that policy or custom played a role in any deliberate indifference to the plaintiff's medical needs). Here, however, there are simply no facts alleged that could permit a reasonable inference that Defendant Inch personally played any role in the non-recognition of The Temple of Set or its associated religious items.

32

### b.    Rejection of religious text, "The Book of the Law"

Plaintiff seeks to hold Defendant Inch individually liable for the rejection of "The Book of the Law." (Doc. 21 at 21). Plaintiff alleges the FDOC's Literature Review Committee (LRC) rejected "The Book of the Law" because it "is not readily understandable by staff." (*Id*. at 21). For context, the FDOC's administrative rules provide that a publication will be rejected if "[t]he publication is written in code or is otherwise written in a manner that is not reasonably subject to interpretation by Department staff as to meaning or intent." Fla. Admin. Code r. 33-501.401(15)(f).

Plaintiff does not allege that Defendant Inch was a member of the LRC or otherwise participated in the decision to reject his book.[5] Plaintiff's administrative grievances incorporated into the Amended Complaint show that his grievance to the Secretary's Office was returned by the Bureau of Inmate Appeals without action because Plaintiff failed

---

[5] The LRC is the final reviewing authority for appeals regarding publications that are impounded or rejected. Fla. Admin. Code r. 33-501.401(22)(a). The LRC is comprised of three members, none of whom are from the Secretary's Office. *Id*.

to attach a copy of the Notice of Rejection or Impoundment (Form DC5-101), as required by Fla. Admin. Code r. 33-501.401(13)(a)(2).[6]  (Doc. 21 at 44).  Plaintiff was told that he had fifteen days from the date at the top of the rejection notice to file an appeal.  (*Id.*).  This response does not indicate that Defendant Inch himself ratified or personally approved the LRC's decision.  Plaintiff's failure-to-train/supervise theory fares no better.  He does not allege facts that permit a reasonable inference that Inch had actual or constructive notice of a deficiency in training or supervising the LRC.  Plaintiff has not stated a factual basis for holding Defendant Inch personally liable for the LRC's decision to reject his book.  For the reasons above, Defendant Inch's motion to dismiss Plaintiff's individual capacity claims against him should be granted.

---

[6] Even if Plaintiff attached the Notice of Rejection or Impoundment (Form DC5-101) in compliance with the procedural rule, the Bureau of Inmate Appeals simply would have forwarded the grievance to the LRC. *See* Fla. Admin. Code r. 33-501.401(22)(c). Upon receipt of the grievance and Form DC5-101, the LRC would hold a meeting and approve or deny the appeal based on the criteria set forth in the Rule. *Id.* The LRC's decision would have been the final decision on the issue. *Id.*

### 4.    Plaintiff has not stated a plausible constitutional challenge to the FDOC's tarot card storage rule.

Plaintiff claims the FDOC's tarot card storage policy violates the Free Exercise Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.  The FDOC's policy provides that tarot cards (and other listed items) must be stored in the chapel because they "pose a general security risk" when allowed in inmates' cells.  Fla. Admin. Code r. 33-602.201(16)(d).

The Eleventh Circuit has previously rejected a First Amendment Free Exercise Clause challenge to the FDOC's tarot card storage policy. *Lemcool v. Fla. Dep't of Corr.*, 543 F. App'x 909, 912 (11th Cir. 2013) (holding that the FDOC's tarot card storage policy was rationally related to legitimate government interest in prison security and did not violate the Free Exercise Clause because it provided inmates with an alternative means of using them in the institutional chapel); *see also Singson v. Norris*, 553 F.3d 660, 662–63 (8th Cir. 2009) (upholding a similar prison policy in part because unrestricted tarot cards could be used for "gambling, trafficking, psychological control, and gang symbols").  In light of this Eleventh Circuit decision, Plaintiff has not plausibly alleged

35

that the FDOC's tarot card storage policy violates the First Amendment's Free Exercise Clause.  So, this claim should be dismissed.

Plaintiff's Fourteenth Amendment Equal Protection Clause claim similarly fails.  Plaintiff claims that the FDOC's tarot card storage policy is discriminatory on its face because it requires inmates who want to use tarot cards to do so in the chapel, but it permits inmates who want to use standard playing cards to do so in their cells.  Plaintiff alleges standard playing cards pose more of a security risk than tarot cards because inmates use them to gamble, which leads to violence.

Plaintiff's allegations do not meet the "similarly situated" element of an equal protection claim.  He is not similarly situated with inmates who have standard playing cards in their cells because there is a material difference between standard playing cards and tarot cards—the FDOC has determined that tarot cards pose a general security risk in inmates' cells but standard playing cards do not.  *See Lemcool*, 543 F. App'x at 912 (recognizing the "potential safety concerns associated with unrestricted use of tarot cards").  Plaintiff argues that the FDOC's security assessment is not rational, but that argument contradicts the Eleventh

Circuit's decision in *Lemcool*, which held that the tarot card storage policy is rationally related to a legitimate government interest. 543 F. App'x at 912. Plaintiff, therefore, has not stated a plausible Fourteenth Amendment Equal Protection Clause claim regarding the FDOC's tarot card storage policy. This claim should be dismissed.

### 5. Plaintiff cannot recover money damages from the FDOC Secretary in his official capacity.

To the extent that Plaintiff seeks money damages from the FDOC Secretary in his official capacity, such a claim is barred by the doctrine of Eleventh Amendment sovereign immunity. Under this doctrine, a plaintiff cannot recover money damages from a state or its individual officers or agents in their official capacities. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65, 71 (1989). Because the FDOC Secretary is a state employee, Plaintiff cannot maintain an official capacity action against him for money damages. Thus, Plaintiff's official capacity claims for damages against the FDOC Secretary should be dismissed.

**C.    Defendants Edwards and Maiorana's Motion to Dismiss should be granted.**

As previously noted, Plaintiff claims that Chaplain Edwards and Warden Maiorana violated his rights under RLUIPA and the First and Fourteenth Amendments. (Doc. 21 at 21-23, 25-27). He seeks nominal and punitive damages against Edwards and Maiorana in their individual/personal capacities ($5,000 in nominal and $100,000 in punitive). (*Id.* at 28). He also seeks injunctive relief. (*Id.* at 25, 28).

Defendants Edwards and Maiorana seek dismissal of Plaintiff's claims on two grounds (the Court already addressed their third ground, that the Amended Complaint was a "shotgun pleading"). (Doc. 37). First, they argue that Plaintiff's claims for injunctive relief are moot because he is no longer housed at Blackwater River, and his request for nominal damages is excessive. (*Id.* at 4-7). Second, they argue that they are not individually/personally liable for monetary damages because the religious restrictions that Plaintiff complains of were caused and controlled by FDOC rules and/or actors, not them. (*Id.* at 8-11).

38

1.    **Plaintiff's claims for injunctive relief against Defendants Edwards and Maiorana in their individual and/or official capacities are moot.**

Defendants Edwards and Maiorana contend that Plaintiff's claims for injunctive relief against them are moot because he is no longer housed at a facility managed, operated, or in any way controlled by either of them or The GEO Group, Inc. (Doc. 37 at 4-6).

The general rule is that a prisoner's transfer or release from a particular facility moots his individual claim for declaratory and injunctive relief against officials at that facility. *Owens v. Centurion*, 778 F. App'x 754, 759 (11th Cir. 2019); *see also Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) (holding that an inmate's claim for injunctive and declaratory relief in a § 1983 action fails to present a case or controversy once the inmate has been transferred).

In Plaintiff's response to Defendants' motion to dismiss, he acknowledges he was transferred from Blackwater River to Jefferson Correctional Institution, which is an FDOC-run facility not managed by GEO Group. (Doc. 46 at 5, 12). He argues that his request for injunctive relief as to Defendants Edwards and Maiorana is not moot because he

likely will be transferred back to Blackwater River *if* he receives disciplinary action in the future that results in a sentence of disciplinary confinement.  (*Id.* at 5).  Plaintiff more recently notified the Court that he was transferred to Sumter Correctional Institution, which is another FDOC-run facility not associated with GEO Group.  (Doc. 52).

There is an exception to the mootness doctrine if the plaintiff shows that "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again."  *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018).  Plaintiff has not satisfied this exception.

It is elemental that courts cannot force a defendant "to act in any way that is beyond [the defendant's] authority to act in the first place."  *Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001).  Put another way, "a claim for injunctive relief can stand only against someone who has the authority to grant it."  *Williams v. Doyle*, 494 F. Supp.2d 1019, 1024 (W.D. Wis. 2007).  Considering the injunctive relief that Plaintiff requests, the only relief that Defendants Maiorana and Edwards would

be authorized to grant is Plaintiff's guaranteed access to the chapel at Blackwater River at least two hours per week.  As Plaintiff concedes, he is no longer at Blackwater River, and the mere *possibility* that Plaintiff may be returned there *if* he is placed in disciplinary confinement is too speculative to invoke the narrow exception for cases that are capable of repetition yet evading review.  Moreover, there is no reasonable expectation that Plaintiff will be housed at a GEO-run facility, since it appears that only 3 of the FDOC's 128 facilities are run by GEO.[7]  For these reasons, Plaintiff's claims for injunctive relief against Defendants Edwards and Maiorana in their individual and/or official capacities must be dismissed as moot.

But to be clear, Plaintiff's transfer from Blackwater River does not moot his *entire* claim for injunctive relief because it does not moot those claims against the FDOC Secretary in his official capacity because Plaintiff remains in the FDOC's custody.

---

[7] The Court takes judicial notice of information on the FDOC's public website regarding the number of institutions in its statewide network and the specific institutions that are managed by The GEO Group, Inc.

41

## 2. Plaintiff cannot recover monetary damages against Defendants Edwards and Maiorana in their individual/personal capacities under RLUIPA.

The Court's discussion of Plaintiff's claims for monetary damages against Defendant Inch in his individual capacity for alleged RLUIPA violations applies to Plaintiff's claims for monetary damages against Edwards and Maiorana for alleged RLUIPA violations. So, these claims must be dismissed for the reasons previously discussed.

## 3. Plaintiff has not plausibly stated a § 1983 claim for monetary damages against Defendants Edwards and Maiorana in their individual capacities.

Last up are Plaintiff's § 1983 claims for monetary damages against Chaplain Edwards and Warden Maiorana in their individual/personal capacities for violating his rights under the Free Exercise Clause and the Equal Protection Clause. Plaintiff asserts the same claims against them as he asserts against Defendant Inch in his individual capacity: (1) they refused to register his religious preference as The Temple of Set and to provide associated religious items; (2) they rejected his request for "The Book of the Law;" and (3) they required him to store his tarot cards in the chapel. Plaintiff also alleges that Defendants Edwards and Warden

Maiorana inhibited the free exercise of his religion by failing to provide sufficient access to the Blackwater River chapel (to facilitate use of his tarot cards). (Doc. 21 at 19).

Defendants Edwards and Maiorana argue that Plaintiff's allegations fail to satisfy the causation element of a § 1983 claim. (Doc. 37 at 8-11). They contend that in order to show causation, Plaintiff must allege that they not only knew of each constitutional violation but had the power to correct it. (*Id.* at 8).

As previously discussed, "section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." *LeMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993) (cleaned up). "[T]he inquiry into causation must be a directed one, focusing on the duties and responsibilities of each of the individual defendants whose acts or omissions are alleged to have resulted in a constitutional deprivation." *Williams*, 689 F.2d at 1381. "Section 1983 thus focuses [the] inquiry on whether an official's acts or omissions were the cause—

not merely a contributing factor—of the constitutionally infirm condition." *LeMarca*, 995 F.2d at 1538.

Concerning the failure to recognize The Temple of Set and its associated religious items (including medallions), Defendants Edwards and Maiorana contend that the FDOC's administrative rules permit inmates to possess only specific religious items tied to religions recognized in the FDOC's rules, and those rules do not recognize The Temple of Set or provide for the possession of religious items tied to that religion. (*Id.* at 9-10). Defendants Edwards and Maiorana argue that they did not draft the FDOC's administrative rules and had no power to change or ignore them. (*Id.* at 10-11).

Defendants make the same causation argument with respect to Plaintiff's claims concerning his inability to receive "The Book of the Law." (Doc. 37 at 10). They assert that Plaintiff acknowledges that the rejection of "The Book of the Law" was done by the FDOC's LRC. (*Id.*). They contend they did not have authority to override or change the LRC's decision that the book ran afoul of Fla. Admin. Code r. 33-501.401, and

so they cannot be held individually liable for the allegedly unconstitutional deprivation with respect to Plaintiff's religious text.

With respect to the tarot card storage policy, Defendants contend that the policy is established by Fla. Admin. Code r. 33-602.201(16)(d)1., which they are not empowered to change or ignore. (Doc. 37 at 9). Defendants argue that the only allegation that potentially implicates personal conduct by either of them is Plaintiff's allegation that Chaplain Edwards did not provide adequate access to the institutional chapel from April through August 2021. (*Id.* at 11 n.7). But they argue that Plaintiff's allegations show that the restrictions applied equally to all inmates and were rationally related to Covid-19 and other security lockdowns. (*Id.*).

### a. Refusal to recognize The Temple of Set and its associated religious items

Plaintiff appears to acknowledge that the denials of his requests for recognition of his religion and its associated religious items were driven by the FDOC's rules and decisions of the FDOC's Chaplaincy Services Section. (Doc. 46 at 8-10). Plaintiff claims that Defendants Edwards and Maiorana are individually liable for the alleged constitutional violations because they failed to follow the FDOC's established procedure for

45

seeking recognition of his religion, specifically, they failed to request that the FDOC's Chaplaincy Services Administrator review Plaintiff's complaints. (*Id.* at 10-11). Plaintiff points to two administrative grievances that allegedly support his argument, one dated May 24, 2021, and the other dated July 12, 2021. (*Id.* at 10).

In the May 24th grievance, Plaintiff requested authorization for "Anubis/Ankh." (Doc. 21 at 31). Defendant Edwards responded that the FDOC did not recognize Anubis, and that it recognized Ankh only for Rastafarians and Egyptian Orthodox (Coptic Christian). (*Id.*). Defendant Edwards suggested that Plaintiff look for a pentagram from another vendor and attached forms for Plaintiff to do so. (*Id.*).

In the July 12th grievance, Plaintiff requested other religious items (black and white candles, an athame, a wand, and prayer rugs or magnetic chalk). (*Id.* at 59). Defendant Edwards responded that none of those items were permissible for any FDOC-recognized religion. (*Id.*).

Plaintiff overlooks the fact that prior to those grievances, Plaintiff complained to Defendant Edwards about the FDOC's failure to recognize The Temple of Set as his religious preference and the failure to permit

him to have "books and things" to practice "religious rights and rituals." (*Id.* at 61). Defendant Edwards affirmed that "The Temple of Set" was not recognized by the FDOC, but Edwards forwarded Plaintiff's concerns to the "Regional Chaplaincy Department," and Defendant Maiorana ratified Edwards' response. (*Id.* at 61-63). This response deferred to the FDOC's rules and the decisions of the FDOC's Chaplaincy Services Section and its administrator. The area/regional chaplaincy services office was Defendant Edwards' direct point of contact for FDOC decisions regarding inmates' requests relating to religious and religious items not listed in the FDOC rules. Fla. Admin. Code rr. 33-503.001(1)(c), 33-602.201(16)(g)-(h).

Plaintiff's Amended Complaint, as a whole, fails to plausibly allege that Defendants Edwards or Maiorana personally caused the alleged deprivation of Plaintiff's ability to freely exercise his religion. Plaintiff's complaint demonstrates that Defendants Edwards and Maiorana acted pursuant to FDOC policy that bound them. Nothing suggests that either Defendant had the authority or ability to (1) formally recognize The Temple of Set, or (2) approve a medallion or other religious item that was

47

not listed in the FDOC's inmate property rule or otherwise authorized by the FDOC's Chaplaincy Services Administrator.  Thus, Plaintiff cannot hold Defendants Edwards or Maiorana individually liable for damages under § 1983 for the failure to officially recognize his religion and associated items of religious practice.  *See Williams*, 689 F.2d at 1383 (holding that "when individuals are being sued in individual capacities for damages for personal injuries, the causation inquiry must be more refined and focused than that undertaken . . . where only declaratory and injunctive relief [are] sought for constitutional violations pervading an entire prison system.").

### b.    Rejection of religious text, "The Book of the Law"

Plaintiff acknowledges that the FDOC's LRC rejected his religious text, and the administrative grievances attached to the Amended Complaint confirm that.  (Doc. 21 at 21, 40-44).  There is no factual basis for holding Defendants Edwards or Maiorana individually liable for the rejection of the text.  For this reason, Plaintiff's § 1983 claims against Defendants Edwards and Maiorana for allegedly depriving him of his religious text should be dismissed for failure to state a claim.

48

### c.    Access to tarot cards

The FDOC's administrative rules clearly dictate that tarot cards must be stored and used in the chapel.  Because FDOC policy dictated where tarot cards had to be stored and used, neither Defendants Edwards nor Maiorana should be held individually liable for restricting Plaintiff's storage and use of the tarot cards to the chapel.

But there is another aspect of Plaintiff's claim concerning his access to the tarot cards.  He claims that Defendants Edwards and Maiorana restricted his access to only two occasions for a total of ninety minutes during the five-month period preceding this lawsuit (April through August 2021).

The FDOC's rules provide that the warden may limit inmates' access to the chapel for religious activities in the interest of security, order, or effective management of the institution.  *See* Fla. Admin. Code R. 33-503.001(3)(c).  Plaintiff alleges he did not have access to the chapel at Blackwater River from the time that his tarot cards arrived at Blackwater River through mid-June, a period of approximately two and a half months.  (Doc. 21 at 19-20).  The administrative grievances

attached to Plaintiff's Amended Complaint show that inmates had no access to the chapel during that time due to Defendant Maiorana's temporary "covid-19 restrictions on the compound," which applied to all religious groups. (*Id.* at 50-52, 56-57).

Federal courts have held that temporary restrictions on movements throughout a prison are reasonably related to the legitimate governmental interest of minimizing health risks associated with the Covid-19 virus. *Hammock v. Watts*, No. 22-cv-0482, 2023 WL 2457242, at *7 (D. Md. Mar. 10, 2023) (holding that a restriction preventing an inmate from attending religious services "was plainly reasonably related to the legitimate penological interests of protecting the health and safety of inmates and correctional staff by preventing an outbreak of COVID-19 within the facility"); *Prince v. Gang*, No. GJH-20535, 2022 WL 596802, at *10 (D. Md. Feb. 28, 2022) (holding that correctional officials' prohibiting unnecessary movement within the compound was a reasonable response to Covid-19); *Atwood v. Days*, No. CV-20-00623-PHX-JAT, 2021 WL 100860, at *8 (D. Ariz. Jan. 12, 2021) (holding that burdening religious exercise by suspending in-person visitation was the

least restrictive means of furthering the compelling governmental interest in preventing the spread of Covid-19 to prison staff and prisoners). Thus, Defendant's Maiorana's temporary Covid-19 related restrictions were reasonable under the circumstances.

Plaintiff acknowledges that after the Covid-19 restrictions were lifted in mid-to-late June, Defendant Edwards granted him access to the chapel. (Doc. 21 at 69). In mid-July, Plaintiff complained to Defendant Edwards that he had been given access only once and for only thirty minutes (Plaintiff stated he required an hour to complete a divination). (*Id.*). Plaintiff acknowledged that Defendant Edwards had placed him on additional callouts to the chapel since that time, but Defendant Edwards then cancelled them. (*Id.*). Defendant Edwards responded that access to the chapel was limited due to "safety and security of the compound" and limitations on "space and time." (*Id.*). After that, Defendant Edwards permitted Plaintiff to attend the chapel once for an hour. (*Id.* at 19-20). So, between the time that the Covid-19 restrictions were lifted in mid-June, and the time Plaintiff filed this lawsuit on September 1, Defendant

Edwards granted Plaintiff access to the chapel twice for a total of an hour and a half.

Plaintiff has not sufficiently alleged that the connection between his limited access to the institutional chapel (just two occasions in a five-month period) and Defendant Edwards' stated reasons of safety, security, and limitations on space and time are "so remote as to render the [limitations] arbitrary or irrational." *Rodriguez*, 38 F.4th at 1330. Thus, Plaintiff has not stated a free exercise claim with respect to his limited access to the chapel at Blackwater River.

With respect to Plaintiff's equal protection claim, he does not allege that any similarly situated inmate received more access to the chapel than he did during the relevant five-month period. This failure dooms Plaintiff's equal protection claims against Defendants Edwards and Warden Maiorana.

To summarize, Plaintiff's factual allegations do not state a plausible claim for monetary damages under § 1983 against Defendant Edwards or Defendant Maiorana in their individual capacities. For these

reasons, the motion to dismiss filed by Defendants Edwards and Maiorana should be granted.

## V.   Conclusion

For the reasons above, it is respectfully **RECOMMENDED** as follows:

1.   The motion to dismiss filed by Defendants Edwards and Maiorana (Doc. 37) should be **GRANTED**, and Plaintiff's claims against them should be **DISMISSED** for failure to state a claim.

2.   The motion to dismiss filed by Defendant Inch (Doc. 43) should be **GRANTED IN PART** to the extent that the following claims should be **DISMISSED** for failure to state a claim: (a) all of Plaintiff's individual capacity claims against Defendant Inch; (b) Plaintiff's official capacity claims alleging that the FDOC Secretary's tarot card storage policy violated the First Amendment Free Exercise Clause and the Fourteenth Amendment Equal Protection Clause; and (c) all of Plaintiff's official capacity claims that seek monetary damages from the FDOC Secretary.   The motion to dismiss filed by Defendant Inch (Doc. 43) should be **DENIED IN PART** to the extent it seeks dismissal of all

Plaintiff's claims for failure to exhaust administrative remedies and on the ground that it is a shotgun pleading.

3.     The Clerk of Court should be directed to update the docket to reflect that under Fed. R. Civ. P. 25(d) current FDOC Secretary Ricky Dixon has been substituted for former FDOC Secretary Mark Inch.  The docket should also reflect that Secretary Dixon's attorney of record is Erik Dewitt Kverne.  (*See* Doc. 31).

4.     The case should be returned to the undersigned for further proceedings on the following claims that remain against the FDOC Secretary in his official capacity:  (a) claim for injunctive relief for violation of RLUIPA related to the FDOC's tarot card storage policy; (b) claims for injunctive relief for violation of RLUIPA and the First Amendment's Free Exercise Clause related to FDOC's failure to recognize The Temple of Set as a religion and its associated items as religious items; (c) claims for injunctive relief for violation of RLUIPA and the First Amendment's Free Exercise Clause related to the FDOC's rejection of "The Book of the Law" as a religious text.

At Pensacola, Florida this 24th day of January 2024.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

## **Notice to the Parties**

Objections to the proposed findings and recommendations set forth above must be filed within fourteen days of the date of this Report and Recommendation.  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.